## DON C. AYER *v.* LUCIUS D. AYER, TRUSTEE.

*Parent and Child.   Contract.   Soldier's Pay and Bounty.*

The plaintiff was the son of the defendant, and testified that, while a minor, he went out to work, and his father told him he might have all he earned; that he afterward enlisted in the army, while still a minor, with his father's consent and promise that whatever money he sent home should be his (the plaintiff's), and he would pay it to him; and testified in detail the amount he sent his father, and when, etc. The defendant claimed that the testimony of the plaintiff, if truthful, established only a state of facts from which the jury were at liberty to infer, or not to infer, such a relation as would entitle the plaintiff to recover; but the court instructed the jury that, if they found the plaintiff's account of the matter, as stated in his testimony, was true, their verdict should be for the plaintiff. *Held,* that in this there was no error.

ASSUMPSIT.   Plea, the general issue.   Trial by jury, December term, 1867, STEELE, J., presiding.

The defendant's counsel insisted that the testimony of the plaintiff, if truthful, established only a state of facts from which the jury were at liberty, according to their judgment, to infer, or not to infer, such a relation as would entitle the plaintiff to recover ; but the court instructed the jury that, if they found the plaintiff's account of the matter, as stated in his testimony, was

true, then their verdict should be for the plaintiff. Exceptions were taken to this point of the charge.

The presiding judge's minutes of the testimony were made a part of the bill of exceptions, and were as follows :

*Don C. Ayer, plaintiff.*—I was twenty-one last March. I first went to live with one of my uncles when four years old, then, after I was nine, with my aunt, then Mrs. Williams. Lived there until father returned from California, in January, 1861. Remained at home until August, 1862. Then went to work out. He (the defendant) told me I might have all I earned, if I would. In September, 1862, I enlisted. Had $100 bounty of Lyndon. I went home to get him (the defendant) to sign his consent. He said I should have all the money. In September, 1862, sent him $100 ; in October, from Brattleboro', $25 ; in March, 1863, $50; April or May, from Union Mills, $40 ; August, when my time expired, $63 (being the $7 per month). I had letters from him acknowledging receipt of the money. I re-enlisted October 20, 1863, for the town of Sheffield. He said again, to send him money, and he would pay me over when I came back. I sent him $25, $40, state pay about $126, and $5 besides. My father has paid me back none of this money. I asked him for it shortly after I was discharged in August. He made a proposition. I refused it. Then he said he would not pay me anything. He proposed to let me have a saw-mill, and said he would give me a deed when I was capable to manage it. I was brought up a farmer. This was shortly after my discharge in August, 1865.

*Cross-examination.*—Father was anxious I should stay at home after my return from the army. Offered to give me a deed of the mill when I should be capable to run it. I refused to do it. That was in August or September, 1865. Nothing was said then about my having my time. My uncle did not adopt me when I lived there. I lived there until my aunt sold her farm. I proposed to stay with Williams until I was twenty-one. Father and Williams had no trade. I staid with father after his return from California, until August, 1862. I talked with father about enlisting, before I did. I went to Lyndon for that purpose. Father did not urge me to enlist, or not to. He told me, when I carried the contract to him to consent, that whatever money I sent home should be mine when I came back, and he would pay me. I first enlisted for nine months. I did not call for money the first time I came home, because I intended to go again. Nothing was said about the money, only he (the defendant) told me how he had made on it. I considered his word good. After I refused to take the

mill, he told me he worked for his father until he was twenty-one, and refused to do anything more about it. I said nothing more about it. Soon as I found out I had a right to my money, I commenced a suit. Father had just before left the state suddenly, and was not expected back. There was no talk that I was to have the rest of my time, and give up my claim to this money. There never was a contract as to my time. All there was he told me that I was to have all the money I earned, if I would go out to work. He refused to get me some clothes. I went and got a suit worth $35, after he refused to pay this, and had it charged to him, and he paid it. He also at one time let me have $6.

*Re-examined.*—My father was considered worth $4000 or $5000, when I trusted him with this money.

*Lucius A. J. Ayer.*—Am a son of the defendant. Was at home when the plaintiff enlisted. Father told Don to send home his money, and when Don got home he should have it, and he would put it to good use. I knew about father's receiving a part of this money.

*Loren Ayer.*—Am a cousin of L. D. Ayer, the defendant. We were in partnership in the mill business. I heard the defendant say in the spring, in April or March, when the plaintiff came to the mill, that he (the plaintiff) was a smart boy, and that he had accumulated so much, and he had it, and was to pay it back. I think he said he (the defendant) promised to.

The deposition of the defendant was read in evidence, in behalf of the defendant, in which the defendant denied having promised to pay back said money to the plaintiff, and stated that the amount he had received of the plaintiff, was $190, but that he had paid it out for the plaintiff, and more too.

The defendant petitioned the supreme court for a new trial, upon the ground that the verdict was against law, and of newly discovered evidence.

*W. W. Grout*, for the defendant.

*G. C. & G. W. Cahoon*, for the plaintiff.

The opinion of the court was delivered by

PROUT, J. This case rests upon a single exception to the charge of the court to the jury. The defendant insisted that the evidence of the plaintiff, if truthful, established only a state of

Ayer v. Ayer, trustee.

facts from which the jury were at liberty, according to their judgment, to infer, or not to infer, such a relation as would entitle the plaintiff to recover. The court, however, held, and instructed the jury, that, if they found the plaintiff's relation of the matter was true and as testified to by him, then their verdict should be in his favor.

No question arising as to the competency of the parties to enter into and to make the agreement it is claimed by the plaintiff they did, the question is as to the legal tendency of the plaintiff's evidence as proving it. The credibility of the witness, as well as the truth of his relation, was, by the instruction given, fairly submitted and left to the jury. This being so, the only other question for their consideration was as to the existence of the alleged relation growing out of the supposed contract, by force of which the plaintiff claimed he was entitled to recover the amount of his earnings in the defendant's hands. The exceptions detail the evidence from which the jury were to determine the question, and we think it not only full and direct, but that, if believed by the jury, it proved the substance of the issue in favor of the plaintiff, and that the court could do no less than to instruct them substantially as they did.

As to the amount the plaintiff was entitled to recover, that was a matter of computation of amounts and interest, as ascertained and established by the evidence. No request being made nor exception taken as to this branch of the case, except as involved in the general question before alluded to, the judgment of the county court must be affirmed.

Having this view of the case, the petition for a new trial, which presents the same question arising upon the exceptions, must be dismissed with costs.